01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KENNETH D. MCELROY,               )     CASE NO. C04-1786-MAT
                                  )
        Plaintiff,                )
                                  )
    v.                            )     ORDER AFFIRMING
                                  )     COMMISSIONER
JO ANNE B. BARNHART, Commissioner )
of Social Security,               )
                                  )
        Defendant.                )
_____ )

Plaintiff Kenneth McElroy proceeds through counsel in his appeal of a final decision of the

Commissioner of the Social Security Administration (Commissioner). The Commissioner denied

plaintiff's application for Disability Insurance (DI) benefits following two hearings before an

Administrative Law Judge (ALJ). The parties have consented to proceed before a Magistrate

Judge in this appeal.

Having considered the Commissioner's decision, the administrative record (AR), and all

memoranda of record, the Court hereby ORDERS that the Commissioner's decision be

AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on April 12, 1938. He has a high school education. His prior work

experience includes work as a carpenter, construction laborer, and garden maintenance worker.

ORDER
PAGE -1

01    Plaintiff applied for DI benefits in October 1995, alleging a disability onset date of May 7, 1992.[1]

02        The Commissioner denied plaintiff's application initially and on reconsideration. ALJ John

03    Bauer held a hearing on January 20, 1998 and heard testimony from plaintiff and from Thomas

04    Wren, a vocational consultant called by plaintiff. (AR 60-84.)

05        On July 14, 1998, the ALJ issued a written decision. (AR 17-32.) He concluded that

06    plaintiff was not under a disability as defined in the Social Security Act at any time through the

07    date of the decision. Plaintiff appealed the ALJ's decision to the Appeals Council. On April 6,

08    2000, the Appeals Council found no reason to review the ALJ's decision. (AR 5-6.)

09        Plaintiff then appealed to this Court. Plaintiff's appeal was assigned case number 00-936R.

10    On September 5, 2001, Magistrate Judge Monica J. Benton issued a Report and Recommendation

11    in that case. (AR 410-17.) Judge Benton recommended that the Commissioner's decision be

12    remanded for further administrative proceedings and that the Commissioner obtain testimony from

13    a vocational expert on remand. (AR 417.) On October 9, 2001, District Judge Barbara J.

14    Rothstein issued an order adopting Judge Benton's Report and Recommendation and remanding

15    this matter for further administrative proceedings. (AR 409.)

16        On August 21, 2002, ALJ Bauer held a new hearing and heard testimony from plaintiff,

17    from plaintiff's friend Michael McInerney, and from vocational expert Susan Bachelder Stewart.

18    (AR 492-549.) On January 3, 2003, the ALJ issued a decision that again denied plaintiff's claim.

19    (AR 320-28.) Plaintiff appealed this decision to the Appeals Council. The Appeals Council

20    denied review on June 30, 2004, making the ALJ's decision the final decision of the

21    Commissioner. (AR 308-10.) This appeal followed.

22                              **DISCUSSION**

23        The Commissioner follows a five-step sequential evaluation process for determining

24    whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

25    _____

26        [1] It appears that plaintiff previously applied for DI benefits in June 1993 and that this
      application was denied. (AR 321.) However, ALJ Bauer permitted plaintiff's previous claim to
      be reopened in this proceeding. (*Id.*)

01  be determined whether the claimant is gainfully employed.  The ALJ found plaintiff not gainfully

02  employed since his alleged onset date.  At step two, it must be determined whether a claimant

03  suffers from a severe impairment.  The ALJ found that plaintiff's fibromyalgia was a severe

04  impairment.  Step three asks whether a claimant's impairments meet or equal a listed impairment.

05  The ALJ found that plaintiff's impairments did not meet or equal a listed impairment.  If a

06  claimant's impairments do not meet or equal a listing, the Commissioner must assess residual

07  functional capacity (RFC) and determine at step four whether the claimant has demonstrated an

08  inability to perform past relevant work.  The ALJ assessed plaintiff's RFC and found him not able

09  to perform his past relevant work.  If a claimant demonstrates an inability to perform past relevant

10  work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains

11  the capacity to make an adjustment to work that exists in significant levels in the national

12  economy.  The ALJ found plaintiff capable of making an adjustment to other work, including work

13  as a light cleaner or night guard.

14      This Court's review of the Commissioner's decision is limited to whether the decision is

15  in accordance with the law and the findings supported by substantial evidence in the record as a

16  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

17  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

18  mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750

19  (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

20  decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

21  2002).

22      In this case, plaintiff challenges the ALJ's determinations at steps two, three, and five, as

23  well as the ALJ's RFC assessment, credibility determinations, and treatment of testimony by

24  vocational expert Susan Bachelder Stewart and plaintiff's vocational consultant Thomas Wren.

25  Plaintiff also alleges judicial bias.  Plaintiff seeks reversal of the Commissioner's decision and an

26  award of benefits.  The Commissioner asserts that the decision is supported by substantial evidence

ORDER
PAGE -3

01  and free of legal error.

02  Relevant Time Period

03  Because plaintiff was last insured for DI benefits on December 31, 1992, he may only be

04  eligible for DI benefits if he was disabled prior to that date. *See Armstrong v. Comm'r of Soc.*

05  *Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998).

06  Step Two Determinations

07  At step two, an ALJ must determine whether a claimant has a severe impairment or

08  combination of impairments. An impairment or combination of impairments is not considered

09  severe if it does not significantly limit the plaintiff's physical or mental ability to do basic work

10  activities. 20 C.F.R. § 404.1521(a). Here, the ALJ found that plaintiff's fibromyalgia was a

11  severe impairment prior to his last insured date of December 31, 1992.

12  Plaintiff challenges the ALJ's determination at step two that plaintiff did not have any

13  severe mental impairments before his last insured date. The ALJ offered the following reasons for

14  this finding:

15  Dr. Burkhart examined the claimant on April 24, 1995, and reported that he had no
    significant depression (exhibit 33). Testing suggested that the claimant had a long-
16  standing impairment with abstract thinking, memory and problem solving, . . . but Dr.
    Burkhart was a bit uncertain about the nature of findings (exhibit 33:7). He did not
17  think that the claimant had a learning disorder.

18  Other evidence challenges Dr. Burkhart. Certainly, the claimant was able to complete
    high school and continue working through the alleged onset date. Thus, any "long-
19  standing" impairment, if that was intended to suggest an organic problem, did not
    limit the claimant's functioning in the past, and there is nothing to show that it
20  worsened at the alleged onset date. A medical panel in June 1997, opined that Dr.
    Burkhart's test results may have reflected a problem with the claimant's pre-stroke
21  vasculature, in light of his stroke shortly after Dr. Burkhart's examination (exhibit
    18:12). That would suggest that the claimant's cognitive difficulties arose after the
22  date his insured status expired.

23  The claimant also alleged some depression. In March 1993, Ronald Early, Ph.D.,
    M.D., examined the claimant. Testing showed only mild depression, due to the
24  claimant's situation of unemployment (exhibit 27). Dr. Early diagnosed dysthymia,
    and rated the claimant's GAF at 70 over the last year (exhibit 27:4).

25
    In October 1994, Dr. Brown noted some depression, and believed the claimant had
26  developed worsening concentration, comprehension, and memory over the past
    couple of years (exhibit 40:25). That report is inconsistent with psychological

ORDER
PAGE -4

01
02
03
> assessments by specialists both before and after Dr. Brown's assessment (exhibits 18, 27).  Further, any "worsening" observed by Dr. Brown apparently occurred after the claimant was last insured.  Dr. Brown's discussion of the claimant's mental functioning is given very little weight.

04 (AR 324-25.)

05      In making this determination, the ALJ weighed evidence from various medical sources.

06 Where not contradicted by another physician, a treating or examining physician's opinion may be

07 rejected only for "'clear and convincing'" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

08 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where contradicted,

09 a treating or examining physician's opinion may not be rejected without "'specific and legitimate

10 reasons' supported by substantial evidence in the record for so doing."  *Id*. at 830-31 (quoting

11 *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  Where the opinion of the treating

12 physician is contradicted, and the non-treating physician's opinion is based on independent clinical

13 findings that differ from those of the treating physician, the opinion of the non-treating physician

14 may itself constitute substantial evidence.  *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

15 1995).  It is the sole province of the ALJ to resolve this conflict.  *Id*.  In addition, more weight

16 should generally be given to the opinion of a specialist about medical issues related to his or her

17 area of speciality than to the opinion of a source who is not a specialist.  20 C.F.R. § 404.1527

18 (d)(5).

19      Here, the ALJ gave little weight to Dr. Brown's October 1994 opinion that plaintiff had

20 developed worsening concentration, comprehension, and memory "over the past couple of years."

21 (AR 285.)  Dr. Brown was plaintiff's rheumatologist.  The ALJ noted that mental health specialists

22 who examined plaintiff before and after Dr. Brown's October 1994 report offered assessments that

23 were not consistent with his opinion.  *See* AR 170-74 (March 1993 report by psychiatrist Dr.

24 Early, who opined plaintiff had mild depression and noted no indication of thought disorder,

25 disorientation, or obvious cognitive difficulty); AR 146 (June 1997 evaluation by psychiatrist Dr.

26 Vandenbelt, who opined plaintiff had "low-grade depression which is under reasonably good

01 control" and finding "no psychiatric reason why he cannot return to work"). These are sufficient

02 reasons to discount Dr. Brown's opinions regarding plaintiff's mental functioning.[2]

03        The ALJ also found that Dr. Burkhart's opinion in April 1995 that plaintiff had difficulties

04 with abstract thinking, problem solving, and memory did not support a finding that plaintiff

05 experienced such difficulties prior to his last insured date. (AR 217.) Dr. Burkhart's opinion was

06 offered more than two years after plaintiff's last insured date. Among other things, the ALJ noted

07 that plaintiff had completed high school and had worked until his alleged onset date of May 7,

08 1992, which suggested that he was not as limited in his mental functioning prior to Dr. Burkhart's

09 evaluation in 1995. Although the evidence on this point may be subject to differing

10 interpretations, the Ninth Circuit has held that "[w]here the evidence is susceptible to more than

11 one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must

12 be upheld." *Thomas*, 278 F.3d at 954.

13        The ALJ also found that plaintiff's depression was mild, rather than severe. This finding

14 is consistent with the assessments of Dr. Early in March 1993 and Dr. Vandenbelt in June 1997.

15 (AR 146, 172.)

16        Therefore, the ALJ's finding that plaintiff did not have a severe mental impairment prior

17 to his last insured date is supported by substantial evidence.

18        <u>Step Three Determination</u>

19        At step three, it must be determined whether plaintiff's severe impairments meet or equal

20 an impairment that is listed in 20 C.F.R. Pt. 404, subpt. P, app. 1. Plaintiff asserts that the ALJ

21 erred in finding that his fibromyalgia did not meet or equal the criteria of any of the conditions

22 identified in any listings during the relevant time period. (Dkt. 20, at 9, 10.) However, plaintiff

23 does not address this contention in the "Legal Discussion" section of his brief, does not identify

24 which listing he believes would apply to his fibromyalgia, and does not show any evidence in the

25 _____

26     [2] In addition, an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

ORDER
PAGE -6

01 record that would support his contention.  It is plaintiff's burden to show that he meets or equals

02 a listed impairment.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  Plaintiff's conclusory

03 assertion that the ALJ erred in finding that his fibromyalgia did not meet or equal a listed

04 impairment is not sufficient to meet that burden.

Plaintiff's Credibility

06       Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

07 reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001)*; see

08 also Thomas*, 278 F.3d at 958-59.  In finding a social security claimant's testimony unreliable, an

09 ALJ must render a credibility determination with sufficiently specific findings, supported by

10 substantial evidence.  "General findings are insufficient; rather, the ALJ must identify what

11 testimony is not credible and what evidence undermines the claimant's complaints."   *Lester v.

12 Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  "We require the ALJ to build an accurate and logical

13 bridge from the evidence to her conclusions so that we may afford the claimant meaningful review

14 of the SSA's ultimate findings."  *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In

15 weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

16 inconsistencies either in his testimony or between his testimony and his conduct, his daily activities,

17 his work record, and testimony from physicians and third parties concerning the nature, severity,

18 and effect of the symptoms of which he complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789,

19 792 (9th Cir. 1997).

20       The ALJ summarized plaintiff's testimony regarding his limitations as follows:

21       During the time relevant to the present matter, he had pain in his neck, back, and
       shoulder, relieved by lying down.  He said that his pain was aggravated by walking or
22       other activities, and that through December 1992 he had difficulty getting out of bed,
       dressing, standing more than 5 minutes or so, and that he needed to lie down.  He
23       thought that he could sit for about 15-20 minutes to relieve his pain.  He said that he
       could walk 1/4 mile to the mailbox, but he would need to stop and rest at a neighbor's
24       house along the way, and such a journey took 20 minutes.

25 (AR 322-23.)

26       The ALJ found "the claimant's statements concerning his impairments and their impact on

ORDER
PAGE -7

01   his ability to work are not fully credible, in light of information contained in the medical reports

02   and other evidence in the record." (AR 323.) In the paragraphs following this finding, the ALJ

03   stated:

> The discussion and assessment of the medical reports contained in the prior decision
> is incorporated herein by reference. Paul Brown, M.D., examined the claimant on
> August 12, 1992, for complaints of pain in his neck on sudden turning, due to an
> earlier accident in 1990 (exhibit 40). Dr. Brown observed the claimant was in no
> acute distress, but he had some trigger-point pain (exhibit 40). The number of trigger
> points is uncertain, and may not be enough to rise to a firm diagnosis of fibromyalgia,
> but he diagnosed fibromyalgia and a cervical strain.
>
> In May 1992 the claimant was examined by a medical panel that noted he had a full
> range of motion of his cervical spine, with pain only at the extremes of movement
> (exhibit 40:3).[3] Dr. Brown had made similar observations (exhibit 40:4). Alan
> Embry, M.D., also met with the claimant in May 1992, for complaints of neck pain,
> but the claimant's neurological testing was normal and cervical x-rays were negative.
> (exhibit 39:1-2).

*Id.*

13          The ALJ also stated that various reports in the record "show that the claimant has some

14   limitations in functioning, but not to the point of disability." (AR 325.) The ALJ noted:

> [T]he claimant testified that he did a fair range of daily living activities. He indicated
> that he did his own personal care, he prepared meals, went grocery shopping, did light
> housework and laundry, and fed his pets. He said that he used a wood stove, and
> friends had to help him split and stack wood. However, the claimant loaded the stove
> with wood.
>
> The District Court raised an issue about the claimant's ability to walk two miles,
> pointing out that the claimant asserted a need to stop and rest. He testified at the
> hearing that he could do two miles, and needed an hour to walk a "round trip"
> (exhibit 46).[4] That does not suggest a markedly limited ability to walk, although it is
> admittedly not a rapid pace. The claimant told Dr. Burkhart that he exercised
> regularly (exhibit 33:2). These factors are not consistent with the claimant's assertion
> that he could only sit, stand or walk for a few minutes at a time, and that he had to

---

[3] It appears that the ALJ is referring here to Exhibit 42:3 (AR 294), rather than Exhibit
40:3 (AR 263).

[4] The ALJ's description of plaintiff's testimony regarding his walking speed does not
appear to be entirely accurate. At the first hearing in this matter, plaintiff testified as follows: Q:
How long did it take you to walk a couple of miles? A: A long time, because I don't walk fast.
Q: Two hours, one hour? A: Well, maybe two hours to go round trip, from where ever I was
at. (AR 68.)

ORDER
PAGE -8

01    spend much of the time lying down because of his pain.

02    The claimant also indicated that he drives a car, which the undersigned initially found
       to be a somewhat discrediting activity.  The District Court pointed out that the
03    claimant asserted difficulty turning his head.  A review of the exhibits indicates that
       plaintiff was not significantly limited in turning his head (exhibits 40:4; 42:3).
04    However, because the claimant's fibromyalgia could cause such limitations and the
       evidence suggests that he has, at times, been limited in cervical motion, the
05    undersigned has considered his alleged restrictions in neck movements in reaching a
       decision.

06    With respect to the claimant's testimony that he needed to use ice packs and he had
07    to lie down to relieve his pain (exhibit 46), there is no medical evidence of record to
       support those allegations during the time relevant to this matter.  Indeed, the claimant
08    was performing aerobic exercises.

09 (AR 325.)

10        An ALJ must "provide clear and convincing reasons for rejecting the claimant's testimony

11 regarding the severity of symptoms." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

12 Under Ninth Circuit law, "once the claimant produces objective medical evidence of an underlying

13 impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack

14 of objective medical evidence to fully corroborate the alleged severity of pain."        *Bunnell v.*

15 *Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).  However, medical evidence is "still a relevant factor

16 in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at

17 857.  In addition, evidence regarding a plaintiff's daily activities may be considered by the ALJ in

18 finding that a plaintiff's subjective pain testimony is not credible. *Id.*        The ALJ cited several

19 medical reports following his credibility finding, noting that these reports indicated that plaintiff

20 had a full range of motion in his cervical spine, with pain only at the extremes of movement, and

21 that he had normal neurological testing and negative cervical x-rays. *Id.*  These reports suggest

22 that plaintiff's testimony regarding his pain were not fully corroborated by the objective findings

23 by examining physicians.  Although this evidence alone would not be sufficient to reject plaintiff's

24 testimony regarding the severity of his symptoms, the ALJ also found plaintiff's activities were not

25 consistent with the limitations that he asserted.  The ALJ noted that plaintiff did his own personal

26 care, prepared meals, went grocery shopping, did light housework and laundry, fed his pets,

ORDER
PAGE -9

01  loaded his wood stove, and drove a car.  The ALJ also noted that plaintiff told his physicians that

02  he exercised regularly and was able to walk two miles, albeit at a slow pace.

03          Although plaintiff's testimony could be subject to different interpretations, the ALJ offered

04  sufficient reasons to find that plaintiff's testimony concerning his impairments and their impact on

05  his ability to work was not fully credible.  As the court noted in Rollins v. Massanari, 261 F.3d

06  853, 857 (9th Cir. 1991), "the ALJ's interpretation of [plaintiff's] testimony may not be the only

07  reasonable one.  But it is still a reasonable interpretation, and is supported by substantial evidence;

08  thus, it is not our role to second-guess it."

09                                            RFC Assessment

10          The ALJ assessed plaintiff's residual functional capacity as follows:

11          Based on an evaluation of the credible evidence as discussed above and in the prior
        decision, the undersigned finds that on and before December 31, [1992],[5] the claimant
12          retained the residual functional capacity to perform light work.  Light work entails
        lifting no more than 20 pounds and frequently up to 10 pounds.  Even though there
13          may be little weight involved, a job is in this category if it requires a good deal of
        standing or walking, or, if done while sitting, the use of hand or foot controls.  A
14          person who can do light work is also considered capable of performing sedentary
        work (20 C.F.R. § 404.1567).  The claimant was also restricted from sudden neck
15          movements to the right and left, and needed to avoid exposure to hazards such as
        heights or machinery.

16

17  (AR 326).

18          Plaintiff argues that the RFC assessment is erroneous because he was incapable of

19  performing light work prior to his last date insured.  In particular, plaintiff notes that in May 1993,

20  he completed a functional capacities evaluation that described greater limitations in his functioning

21  that the ALJ found.[6]  (AR 221-28.)

22

23  _____

24          [5] In the decision, the ALJ listed the date as "December 31, 2002."  (AR 326.)  This appears
    to be a typographical error, since plaintiff's last date insured was December 31, 1992.

25          [6] It should be noted that this evaluation was performed approximately five months after
26  plaintiff's insured status expired on December 31, 1992.  However, plaintiff testified that his
    conditions in November/December 1992 were similar to his conditions in May of 1993.  (AR 546-
    47.)

ORDER
PAGE -10

01        The ALJ addressed the May 1993 functional capacities evaluation as follows:

02    In May 1993 the claimant had a physical capacity assessment by a therapist, which
      suggested that he had significant limitations in lifting, sitting, and walking (exhibit 34).

03

04    But that assessment appears to have relied on the claimant's subjective statements; it
      was not consistent with the negative medical findings by the panel examination in May
      1992 (exhibit 42:3). The therapist's assessment is not persuasive.

05

06    (AR 325.)

07        The May 1993 evaluation was conducted by a physical therapist and an occupational

08    therapist, neither of whom are regarded acceptable medical sources under Social Security

09    regulations. 20 C.F.R. § 404.1513. As such, their opinions must be given the weight of lay

10    testimony. The Ninth Circuit has held that "lay testimony as to a claimant's symptoms is

11    competent evidence that an ALJ must take into account, unless he or she expressly determines to

12    disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*,

13    236 F.3d 503, 511 (9th Cir. 2001).

14        Here, the ALJ offered germane reasons to discount the therapists' opinions. Although it

15    appears that the May 1993 evaluation included some physical tests, it also appears that the

16    assessment of plaintiff's ability to perform the physical maneuvers was based on plaintiff's

17    subjective statements. As discussed earlier, the ALJ offered sufficient reasons to discount

18    plaintiff's subjective complaints regarding his limitations. The ALJ also cites to a May 1992 report

19    (Ex. 42:3), which indicates that plaintiff had a full range of motion of the cervical spine, with pain

20    only at the extremes. (AR 294.) Given the ALJ's reference to a "panel examination," it could also

21    be inferred that the ALJ was referring to an August 1992 panel evaluation, which found that

22    plaintiff could "probably perform light duty work" and that "it is possible that he could perform

23    medium level work." (AR 164.) Although the evidence regarding these issues may be subject to

24    different interpretations, the ALJ offered sufficiently germane reasons to discount the therapists'

25    opinions from the May 1993 evaluation. *See Lewis*, 236 F.3d at 512 (upholding rejection of lay

26    testimony where the ALJ offered "arguably germane" reasons).

ORDER
PAGE -11

01 <u>Step Four Determination Regarding Ability to Perform Past Work</u>

02        At step four, the ALJ found that plaintiff could not perform his past relevant work.

03 Neither party disputes this finding.  The ALJ then proceeded to step five, at which point the

04 burden shifts to the Commissioner to demonstrate that plaintiff was capable of making an

05 adjustment to other work that exists in significant levels in the national economy.

06 <u>Step Five Determination</u>

07        At step five, the ALJ determined that plaintiff could perform the positions of light cleaner

08 and night guard.  These jobs were identified by vocational expert (VE) Susan Bachelder Stewart

09 in response to a hypothetical based on the ALJ's RFC assessment for plaintiff.

10        Plaintiff argues that the VE's opinions are invalid because the ALJ's hypothetical did not

11 accurately state plaintiff's RFC.  However, as discussed above, the ALJ offered sufficient reasons

12 to reject the greater RFC limitations asserted by plaintiff.

13        Plaintiff also argues that he could not work as a night guard because such a job requires

14 stair climbing, at least in cases of emergency.  (AR 541.)  However, the ALJ's RFC assessment

15 did not include limitations on stair climbing; moreover, even the May 1993 functional capacities

16 evaluation found that plaintiff could climb stairs occasionally.  (AR 228.)  Plaintiff also maintains

17 that he could not work as a night guard because he testified that he was taking medications prior

18 to his last insured date that affected his ability to be alert, which the VE indicated was a

19 requirement for such a position.  *See, e.g.*, AR 516-17 (plaintiff testifies that his medications made

20 him sleepy); 542-43 (VE testifies that night guard must be alert).  However, even assuming that

21 these points are correct, there is no evidence that the other position identified by the VE (light

22 cleaner) would require a similar level of alertness.

23        Plaintiff also argues that the ALJ improperly rejected the testimony of Thomas Wren, a

24 vocational consultant who testified on plaintiff's behalf at the first hearing and who issued a

25 written vocational update following the second hearing.  The ALJ rejected Mr. Wren's opinions

26 as follows:

ORDER
PAGE -12

01    On January 8, 1998, Mr. Wren concluded that the claimant could not perform any
substantial gainful employment on a reasonably continuous basis (exhibit 29).  On
02    October 8, 2002, he made the same determination (exhibit 61:8).  However, he based
those conclusions on the claimant's purported limitations in sitting, standing, walking,
03    using hands and feet, and on cognitive limitations (exhibit 61).  Those functional
limitations are not supported by the evidence and therefore Mr. Wren's reports do not
04    have an adequate basis.  His opinion is not persuasive.

05    (AR 327.)  These are sufficient reasons to discount Mr. Wren's opinions.

06        Mr. Wren's opinions may be rejected for additional reasons.  As the Commissioner

07    correctly argues, the record does not establish Mr. Wren's qualifications.  Furthermore, Mr.

08    Wren's recitation of plaintiff's physical capacities is based entirely on plaintiff's subjective

09    assessment of his abilities with no medical support or documentation.  (AR 185-86, 490.)  Mr.

10    Wren's conclusion that plaintiff cannot work is wholly conclusory, is based on no medical

11    evidence, and is an opinion on an issue reserved to the Commissioner.  *See* SSR 96-5p.

12    <u>Judicial Bias</u>

13        Finally, plaintiff asserts that ALJ Bauer was biased against him.  (AR 480-83.)  Under

14    Ninth Circuit law, "ALJs and other similar quasi-judicial administrative officers are presumed to

15    be unbiased.  This presumption can be rebutted by a showing of conflict of interest or some other

16    specific reason for disqualification." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).  A

17    plaintiff alleging judicial bias must "show that the ALJ's behavior, in the context of the whole case,

18    was 'so extreme as to display clear inability to render fair judgment.'" *Rollins v. Massanari*, 261

19    F.3d 853, 858 (9th Cir. 2001) (*quoting Liteky v. United States*, 510 U.S. 540, 551 (1994)).

20    Although plaintiff lists a number of complaints about the ALJ's conduct, this Court cannot find

21    on a review of the entire record that the ALJ's behavior displayed a clear inability to render fair

22    judgment.

23    / / /

24    / / /

25    / / /

26    / / /

## **CONCLUSION**

For the reasons set forth above, the Commissioner's Decision is affirmed.

DATED this  5th  day of May, 2005.

_____
Mary Alice Theiler
United States Magistrate Judge